Gina L. TENBRINK, Plaintiff,

v.

**FEDERAL HOME LOAN
BANK, Defendant.**

No. 94–4236–SAC.

United States District Court,
D. Kansas.

Feb. 6, 1996.

**1158**

Kenneth M. Carpenter, J. Richard Showalter, II, Carpenter Chartered, Topeka, KS, for plaintiff.

Patricia E. Riley, Weathers & Riley, Topeka, KS, Wesley A. Weathers, Weathers & Riley, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

CROW, District Judge.

Gina L. Tenbrink brings this Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, case against the Federal Home Loan Bank (FHLB), claiming that FHLB failed to reasonably accommodate her disability by failing to provide her with health care benefits. Highly summarized, these are the basic facts, claims and defenses central to this case: Although FHLB reasonably accommodated Tenbrink's Chronic Fa-

tigue Syndrome by providing her with part-time employment, Tenbrink claims that FHLB's refusal to provide employer-paid medical insurance benefits while employed in a part-time position violated 42 U.S.C. § 12112(a) and (b)(1) and 29 C.F.R. § 1630.5.[1] Tenbrink seeks total damages in the amount of $23,857.00. FHLB denies Tenbrink's claims, arguing that the ADA does not require employers to provide greater benefits to its disabled employees than they provide to similarly situated employees who are not disabled.

This case comes before the court upon FHLB's motion for summary judgment (Dk. 19) and upon Tenbrink's cross-motion for summary judgment on the issue of liability (Dk. 21). The facts are essentially uncontroverted. In fact, in response to FHLB's motion for summary judgment, Tenbrink makes no effort to comply with D.Kan.Rule 56.1.[2] Based upon the plaintiff's failure to meet the requirements of D.Kan.Rule 56.1, the court deems all of the defendant's uncontroverted facts admitted. *See* D.Kan.Rule 56.1. ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). FHLB does not controvert any of the facts alleged by Tenbrink.

### Summary Judgment Standards

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record

---

1. "It is unlawful for a covered entity to limit, segregate, or classify a job applicant or employee in a way that adversely affects his or her employment opportunities or status on the basis of disability." 29 C.F.R. § 1630.5.

2. In its reply brief, FHLB argues that Tenbrink's response fails to comply with D.Kan.Rule 206. Effective October 1, 1995, the local rules were superseded by the "Rules of Practice of the United States District Court for the District of Kansas." The relevant portion of D.Kan.Rule 206 is now found at D.Kan.Rule 56.1.

taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

■ The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

■ If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the nonmoving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin*, 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 929 (7th Cir.1995); *see Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d at 1273.

■ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

### Uncontroverted Facts

Tenbrink began working for FHLB in 1988 and has been an employee of FHLB until at least the filing of this case.

Under FHLB's medical and dental benefits plan in effect throughout the relevant time, employees who worked less than thirty (30) hours per week were not entitled to medical insurance benefits. As part of its health insurance benefit, FHLB has an excess liability insurance policy with Jefferson–Pilot Life Insurance Company, group policy 18138. That policy provides that an FHLB employee must be working at least thirty (30) hours per week in order to be an eligible member of the group coverage. At no time relevant to this lawsuit has FHLB possessed the authority to modify the terms of its medical and dental benefits plant to include employees or classes of employees not covered by its policies with Jefferson–Pilot Life In-

surance company without obtaining Jefferson–Pilot's express approval for any such modification.

In 1992 and 1993, employees on leave without pay were not entitled to medical insurance benefits under FHLB's medical and dental benefits plan. Throughout the relevant time, FHLB had discretion under its medical and dental benefits plan to permit coverage of full-time employees who were on medical or disability leave, but lacked the discretion to extend benefits to part-time employees.

Tenbrink requested and was granted leave without pay from August 1992 until March 1993 due to illness. When Tenbrink returned to work in March 1993, she requested a part-time position because her illness, Chronic Fatigue Syndrome,[3] precluded her from working full time. FHLB created a part-time position for Tenbrink in March 1993. In the part-time position to which Tenbrink was assigned in March 1993, she was scheduled to work and actually worked less than thirty (30) hours per week. When Tenbrink returned to work in March 1993, FHLB credited her with payment of a pro rata portion of her medical insurance premium based upon the number of days she worked during the month. From March 1993 to the present, no other FHLB employees who was on leave without pay or who worked less than thirty (30) hours per week was entitled to any employer-paid medical insurance benefits.

Tenbrink's medical insurance coverage terminated in January 1994 because employees who worked less than thirty (30) hours per week were not entitled to medical insurance benefits.

### ADA

▪▪▪ "The ADA and its attendant regulations were enacted, in part, to address perceived inadequacies in the Rehabilitation Act of 1973, 29 U.S.C. § 794." *Hutchinson v. United Parcel Service, Inc.,* 883 F.Supp. 379, 387 (N.D.Iowa 1995). In its findings, Congress concluded that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress also found that "individuals with disabilities continually encounter various forms of discrimination" 42 U.S.C. § 12101(a)(5). One of the purposes of the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). *See Hutchinson,* 883 F.Supp. at 390 (thoroughly discussing the history of the ADA). However, "[t]he ADA is not a job insurance policy, but rather a congressional scheme for correcting illegitimate inequities the disabled face." *Hedberg,* 47 F.3d at 934. "The ADA became effective on July 26, 1992, and it does not apply retroactively." *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 557 (D.Kan.1995).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

▪▪ "Accordingly, to qualify for relief under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to per-

---

**3.** Tenbri k's Chronic Fatigue Syndrome impairs her activities of daily living.

form the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Intern. Corp.,* 45 F.3d 357, 360–361 (10th Cir. 1995); *see Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995).

The term "reasonable accommodation" may include:

> (A) making existing facilities used by . employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

 Under the ADA the term "discriminate" includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(b)(1). The term discrimination is also defined to include an employer "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "It is plain enough what 'accommodation' means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Vande Zande v. State*

*of Wis. Dept. of Admin.,* 44 F.3d 538, 542 (7th Cir.1995).

## Burden of Proof under the ADA

 "Plaintiff has the burden to establish that he is 'disabled' and 'qualified' to perform the essential functions of the job either with or without reasonable accommodation." *Dutton v. Johnson County Bd. of County Com'rs,* 859 F.Supp. 498, 504 (D.Kan. 1994); *see Tyndall v. National Educ. Centers,* 31 F.3d 209, 213 (4th Cir.1994) ("Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation.").

Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate. (citations omitted). If the employer presents such evidence, the plaintiff may not simply rest on his pleadings. He "has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. Unit A 1981); *see Mason,* 32 F.3d at 318; *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir. 1991). As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993) (citations omitted).

*White,* 45 F.3d at 361.

 The Equal Employment Opportunity Commission (EEOC) has developed regulations for the purpose of implementing Title I of the ADA.[4] *See* 29 C.F.R. § 1630.1(a); 42

---

4. The ADA consists of different titles. *Gorsline v. State of Kansas,* No. 93–4254–SAC, 1994 WL 129981, *2, 1994 U.S. Dist. LEXIS 4552, at *4 (D.Kan. March 4, 1994).

 Title I of the ADA is codified at 42 U.S.C. §§ 12111–12117; Title II of the ADA is codified at 42 U.S.C. §§ 12131–12165. Title I proscribes discrimination by a "covered entity" against a "qualified individual with a disability

because of the disability" in all of the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). In contrast, Title II prohibits a "public entity" from discriminating against "a qualified individual with a disability" because of the disability in "the benefits or the services, programs, or activities" of the public entity. 42 U.S.C. § 12132.

U.S.C. § 12116. The Appendix to Part 1630—Interpretative Guidance on Title I of the Americans with Disabilities Act, Section 1630.5 provides: [5]

> This provision and the several provisions that follow describe various specific forms of discrimination that are included within the general prohibition of § 1630.4. Covered entities are prohibited from restricting the employment opportunities of qualified individuals with disabilities on the basis of stereotypes and myths about the individual's disability. Rather, the capabilities of qualified individuals with disabilities must be determined on an individualized, case by case basis. Covered entities are also prohibited from segregating qualified employees with disabilities into separate work areas or into separate lines of advancement.

> Thus, for example, it would be a violation of this part for an employer to limit the duties of an employee with a disability based on a presumption of what is best for an individual with such a disability, or on a presumption about the abilities of an individual with such a disability. It would be a violation of this part for an employer to adopt a separate track of job promotion or progression for employees with disabilities based on a presumption that employees with disabilities are uninterested in, or incapable of, performing particular jobs. Similarly, it would be a violation for an employer to assign or reassign (as a reasonable accommodation) employees with disabilities to one particular office or installation, or to require that employees with disabilities only use particular employer provided non-work facilities such as segregated break-rooms, lunch rooms, or lounges. It would also be a violation of this part to deny employment to an applicant or employee with a disability based on

> generalized fears about the safety of an individual with such a disability, or based on generalized assumptions about the absenteeism rate of an individual with such a disability.

> In addition, it should also be noted that this part is intended to require that employees with disabilities be accorded equal access to whatever health insurance coverage the employer provides to other employees. This part does not, however, affect pre-existing condition clauses included in health insurance policies offered by employers. Consequently, employers may continue to offer policies that contain such clauses, even if they adversely affect individuals with disabilities, so long as the clauses are not used as a subterfuge to evade the purposes of this part.

> So, for example, it would be permissible for an employer to offer an insurance policy that limits coverage for certain procedures or treatments to a specified number per year. Thus, if a health insurance plan provided coverage for five blood transfusions a year to all covered employees, it would not be discriminatory to offer this plan simply because a hemophiliac employee may require more than five blood transfusions annually. However, it would not be permissible to limit or deny the hemophiliac employee coverage for other procedures, such as heart surgery or the setting of a broken leg, even though the plan would not have to provide coverage for the additional blood transfusions that may be involved in these procedures. Likewise, limits may be placed on reimbursements for certain procedures or on the types of drugs or procedures covered (e.g. limits on the number of permitted X-rays or non-coverage of experimental drugs or procedures), but that limitation

*Olds v. Alamo Group (KS), Inc.,* 889 F.Supp. 447, 449–450 (D.Kan.1995).

**5.** The EEOC published as an appendix to the regulations a section-by-section "Interpretive Guidance on Title I of the Americans with Disabilities Act." 29 C.F.R. Pt. 1630, App. We have looked to this source in interpreting the ADA. *See Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Ass'n,* 37 F.3d 12, 16 (1st Cir. 1994). Such administrative interpretations of

the Act by the enforcing agency, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

*Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 672 (1st Cir.1995).

must be applied equally to individuals with and without disabilities. See Senate Report at 28–29; House Labor Report at 58–59; House Judiciary Report at 36.

Leave policies or benefit plans that are uniformly applied do not violate this part simply because they do not address the special needs of every individual with a disability. Thus, for example, an employer that reduces the number of paid sick leave days that it will provide to all employees, or reduces the amount of medical insurance coverage that it will provide to all employees, is not in violation of this part, even if the benefits reduction has an impact on employees with disabilities in need of greater sick leave and medical coverage. Benefits reductions adopted for discriminatory reasons are in violation of this part. See *Alexander v. Choate,* 469 U.S. 287 [105 S.Ct. 712, 83 L.Ed.2d 661] (1985). See Senate Report at 85; House Labor Report at 137. (See also, the discussion at § 1630.16(f) Health Insurance, Life Insurance, and Other Benefit Plans).

*Section 1630.5 Limiting, Segregating and Classifying.*

29 C.F.R. § 1630.16(f) provides:

(f) *Health insurance, life insurance, and other benefit plans—*

(1) An insurer, hospital, or medical service company, health maintenance organization, or any agent or entity that administers benefit plans, or similar organizations may underwrite risks, classify risks, or administer such risks that are based on or not inconsistent with State law.

(2) A covered entity may establish, sponsor, observe or administer the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law.

(3) A covered entity may establish, sponsor, observe, or administer the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

(4) The activities described in paragraphs (f)(1), (2), and (3) of this section are permitted unless these activities are being used as a subterfuge to evade the purposes of this part.

The Appendix to Part 1630—Interpretative Guidance on Title I of the Americans with Disabilities Act, Section 1630.16(f) provides:

This provision is a limited exemption that is only applicable to those who establish, sponsor, observe or administer benefit plans, such as health and life insurance plans. It does not apply to those who establish, sponsor, observe or administer plans not involving benefits, such as liability insurance plans.

The purpose of this provision is to permit the development and administration of benefit plans in accordance with accepted principles of risk assessment. This provision is not intended to disrupt the current regulatory structure for self-insured employers. These employers may establish, sponsor, observe, or administer the terms of a bona fide benefit plan not subject to state laws that regulate insurance. This provision is also not intended to disrupt the current nature of insurance underwriting, or current insurance industry practices in sales, underwriting, pricing, administrative and other services, claims and similar insurance related activities based on classification of risks as regulated by the States.

The activities permitted by this provision do not violate part 1630 even if they result in limitations on individuals with disabilities, provided that these activities are not used as a subterfuge to evade the purposes of this part. Whether or not these activities are being used as a subterfuge is to be determined without regard to the date the insurance plan or employee benefit plan was adopted.

However, an employer or other covered entity cannot deny a qualified individual with a disability equal access to insurance or subject a qualified individual with a disability to different terms or conditions of insurance based on disability alone, if the disability does not pose increased risks. Part 1630 requires that decisions not based on risk classification be made in conformity with non-discrimination requirements. See Senate Report at 84–86;

House Labor Report at 136–138; House Judiciary Report at 70–71. See the discussion of s 1630.5 Limiting, Segregating and Classifying.

Section 1630.16(f) Health Insurance, Life Insurance, and Other Benefit Plans.

## Analysis

In this case, FHLB does not contest Tenbrink's claim that Chronic Fatigue Syndrome is a disability within the meaning of the ADA. FHLB also agrees that Tenbrink is qualified for the part-time position that she currently holds. Instead, FHLB contends that Tenbrink cannot prove that she was discriminated against based upon her disability. FHLB contends that Tenbrink was treated like other employees who are not disabled and that the ADA does not require it to provide benefits to her that it does not provide to employees who are not disabled.

Tenbrink responds, arguing that the ADA clearly contemplates creating a part-time position as a reasonable accommodation for a disability. Tenbrink contends that the mere fact that FHLB's existing personnel policies did not provide for medical coverage for part-time employees does not moot the question of discrimination under the ADA. Tenbrink suggests that FHLB's accommodation was defective because it failed to provide her with the privileges and benefits of employment equal to those enjoyed by nondisabled employees—paid medical benefits.

In its reply, FHLB agrees that although a "reasonable accommodation" may take the form of providing part-time employment under some circumstances, "it does not follow that in such instances the employee is entitled to the benefits of the previous full-time position." FHLB, citing 29 C.F.R. § 1630.2(o), argues that when an employee is reassigned to a lower position as a reasonable accommodation for a disability, the employer is not required to pay the employee the salary or benefits of the former, higher position.

Based upon the uncontroverted facts and the applicable law, the court grants FHLB's motion for summary judgment and denies Tenbrink's cross motion for summary judgment on the issue of liability. In *Rhodes v.* *Bob Florence Contractor, Inc.,* 890 F.Supp. 960 (D.Kan.1995), this court rejected an ADA claim analogous to Tenbrink's claim. In *Rhodes,* the plaintiff claimed that his disability precluded him from working more than thirty hours per week. The plaintiff argued that his employer failed to reasonably accommodate his disability by, *inter alia,* failing to increase his rate of pay above union scale. This court concluded that such a proposal was not a valid or reasonable accommodation under the ADA:

> The regulations implementing the ADA and the case law interpreting clearly support this conclusion. *See Milton,* 53 F.3d at 1124–25 ("An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job." *See* 29 C.F.R. Pt. 1630 App. 1630.2(o); *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir.1991). An accommodation that would result in other employees having to worker (sic) harder or longer hours is not required.); 29 C.F.R. Pt. 1630, App. 1630.2(o) ("It should be noted that an employer is not required to promote an individual with a disability as an accommodation."). In short, the ADA did not require BFC to increase Rhodes' pay for working thirty hours per week to a rate that would make his gross pay equal to the amount he earned when he was working forty hours per week or to a rate above the amount paid other workers performing the same job.

890 F.Supp. at 967.

As in *Rhodes,* nothing presented in this case suggests that FHLB has discriminated against Tenbrink on the basis of her disability. Instead, Tenbrink has received the same benefits afforded non-disabled employees. Nor is there sufficient evidence for a rational factfinder to conclude that FHLB's failure to provide health insurance coverage for part-time workers is a subterfuge for the purpose of evading liability under the ADA. In short, nothing argued or presented by Tenbrink is sufficient to withstand FHLB's motion for summary judgment.

IT IS THEREFORE ORDERED that Federal Home Loan Bank's motion for summary judgment (Dk. 19) is granted.

IT IS FURTHER ORDERED that Tenbrink's cross-motion for summary judgment on the issue of liability (Dk. 21) is denied.