**Charlie MILTON, Plaintiff–Appellant,**

v.

**SCRIVNER, INC., Defendant–Appellee.**

**Gary MASSEY, Plaintiff–Appellant,**

v.

**SCRIVNER, INC., Defendant–Appellee.**

**Nos. 94–6242, 94–6313.**

United States Court of Appeals, Tenth Circuit.

April 21, 1995.

Rick W. Bisher of Boettcher, Martin & Ryan, Oklahoma City, OK, for plaintiffs-appellants.

James C. Chandler, Peter T. Van Dyke, and Sam Reynolds Fulkerson of Lytle Soule & Curlee, Oklahoma City, OK, for defendant-appellee.

Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs[1] appeal the orders of the district court granting summary judgment to defendant Scrivner, Inc. Plaintiffs' suits alleged that they were illegally terminated by Scrivner because of their disabilities, in violation of the Americans with Disabilities Act (ADA or the Act), 42 U.S.C. §§ 12101–12213, and state law. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[2]

Plaintiffs both worked for Scrivner as grocery selectors in Scrivner's grocery warehouse, where both had previously sustained various on-the-job injuries. In 1992, Scrivner established new production standards which required plaintiffs to accomplish their jobs in a shorter amount of time. When plaintiffs were unable to meet the pace of the new standards, they were discharged.

*Summary*

We begin with a summary overview, addressing the district court's conclusions regarding preemption and its effect on the various state-law claims presented, and the import of the district court's conclusion that plaintiffs are not eligible for relief under the ADA.

Plaintiffs' complaints base jurisdiction on the Americans with Disabilities Act. Each of the three counts in the complaints allege some injury to plaintiffs as a result of defendant's allegedly illegal disability discrimination. While overlapping and redundant, as best we can determine, plaintiffs allege a federal claim for violation of the ADA, a state claim for wrongful termination under Oklahoma law, and various state and federal claims flowing from the unlawful discrimination and alleged violations of the collective bargaining agreement between plaintiffs' union and defendant. All claims are thus dependent upon a finding that defendant illegally discriminated against plaintiffs because of their disabilities. *See Milton* Supp.App. at 1–5; *Massey* Appellant's App. at 1–5 (Complaints).

To the extent plaintiffs allege state claims based on defendant's actions which they deem in violation of their rights under the collective bargaining agreement, the district court was correct to conclude that those claims are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and are, therefore, determined exclusively by reference to federal law. While we disagree with the district court that plaintiffs' state

---

1. Because these two cases involve the same defendant, the same counsel, the same judge, and substantially the same allegations, facts, and issues, we have treated them as companion cases. Any substantive differences between them will be appropriately noted.

2. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

tort claims for disability discrimination are similarly preempted, we find that the grants of summary judgment on these claims were correct because plaintiffs have failed to raise a genuine issue of material fact regarding defendant's proffered defense. Turning to the ADA claims, we agree with the district court that plaintiffs have failed to raise a genuine issue of material fact regarding their status as otherwise qualified individuals with a disability under the ADA. And finally, because defendant has not illegally discriminated against plaintiffs based on their alleged disabilities, claims of violation of the collective bargaining agreement stemming from that same theory also fail.

*Discussion*

▆▆▆ *§ 301 Preemption of State Claims*

Section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)), preempts state causes of action addressing "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, ... whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." When resolution of a state law claim depends upon analysis of the terms of a labor agreement, section 301 will preempt that claim. *Saunders v. Amoco Pipeline Co.,* 927 F.2d 1154, 1155 (10th Cir.) (citations omitted), *cert. denied,* 502 U.S. 894, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). If evaluation of a state claim is "inextricably intertwined" with consideration of the terms of a collective bargaining agreement, and/or if state law "purports to define the meaning of the contract relationship, that law is preempted." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Thus, to the extent plaintiffs' state law claims are based on defendant's actions which they deem to be in violation of the collective bargaining agreement, their state claims are preempted by § 301 and are determined according to federal law.[3]

*Plaintiffs' State-Based Discrimination Claims*

▆▆▆ Plaintiffs' state law tort claims of wrongful disability discrimination are another matter. In contrast to plaintiffs' claims regarding violation of the collective bargaining agreement, plaintiffs' claims that they were discriminated against because of their disabilities and contrary to the law of Oklahoma can be resolved without reference to the collective bargaining agreement. If plaintiffs are able to meet all the elements necessary to sustain such a claim, they prevail under Oklahoma law irrespective of the terms of any labor agreement. Thus, as in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988), "the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." Plaintiffs' state law discrimination claims, therefore, are not preempted by § 301. This is true "notwithstanding the fact that 'the state-law analysis might well involve attention to the same factual considerations'" that might be involved in determining the federal issues. *Davies v. American Airlines, Inc.,* 971 F.2d 463, 466 (10th Cir.1992) (quoting *Lingle,* 486 U.S. at 408, 108 S.Ct. at 1883), *cert. denied,* —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993). The fact that plaintiffs' state law claims are not preempted by federal law, however, does not mean that plaintiffs can therefore avoid summary judgment on these claims.

▆▆▆ Although not specifically cited by plaintiffs as a basis for their claims, we presume they would proceed under Okla.Stat. Ann. tit. 25 § 1302, which provides in pertinent part:

---

**3.** In her disposition of the *Milton* case, the district judge held that, to the extent plaintiff was alleging fraud with the intent to deprive plaintiff of retirement benefits, such claims were preempted by ERISA. This is undeniably correct. ERISA preemption is "deliberately expansive." *Airparts Co. v. Custom Benefit Servs. of* *Austin, Inc.,* 28 F.3d 1062, 1065 (10th Cir.1994) (quotations omitted). "[C]ommon law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan." *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 509 (10th Cir.1991).

A. It is a discriminatory practice for an employer:

1. To fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of ... handicap unless such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the employer's business or enterprise.

Okla.Stat.Ann. tit. 25, § 1302. As will be discussed below, defendant has produced evidence that the speed now required in the grocery selector job is a "bona fide occupational qualification reasonably necessary to the normal operation of [defendant's] business," and that defendant's termination of plaintiffs was related to that qualification. *Milton* Appellant's App.Vol. I at 103, Vol. II at 285–90; *Massey* Appellant's App.Vol. I at 96, Vol. II at 178–82. Because plaintiffs have presented no evidence that would raise a genuine issue of material fact regarding this matter, plaintiffs could not prevail on their state employment discrimination claims as a matter of law. Summary judgment in favor of defendant, therefore, was appropriate.[4] *See White v. York Int'l Corp.,* 874 F.Supp. 342, 345 (W.D.Okla.), *aff'd,* 45 F.3d 357 (10th Cir.1995).

*Federal Claims Involving the Collective Bargaining Agreement*

■ As will be more fully developed below, we agree with the district court that plaintiffs are not "qualified person[s] with a disability." Therefore, because defendant has not illegally discriminated against plaintiffs based on their alleged disabilities, all claims of violation of the collective bargaining agreement stemming from that same theory also fail.[5]

■ Plaintiffs initially argue that the district court erred in refusing to consider discovery evidence amassed in other ADA cases

involving Scrivner's grocery selector operation. They particularly urge that the evidence in *Bolton v. Scrivner,* 836 F.Supp. 783 (W.D.Okla.1993), *aff'd* 36 F.3d 939 (10th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995), should have been considered by the district court.

Fed.R.Civ.P. 32(a)(4) provides, in relevant part:

when an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.

In response to plaintiffs' attempt to use deposition evidence from *Bolton,* the district court addressed the substantive differences between their cases and *Bolton, see Milton* Appellant's App.Vol. II at 417; *Massey* Appellant's App. Vol. II at 416–17, and implied that the cases are not sufficiently similar to *Bolton* to warrant joint use of deposition testimony. That conclusion notwithstanding, the district court further stated that it had "reviewed the items of evidence taken in the other cases and concludes that even if allowed, this material does not establish the existence of disputed material facts that preclude the entry of summary judgment." *Milton* Appellant's App. Vol. II at 417; *Massey* Appellant's App. Vol. II at 417. Thus, because the district court did consider the contested material and because that material is also included in the record on appeal and has been reviewed by us, any error in the district court's treatment of the contested deposition evidence is harmless.

In its motion for summary judgment on plaintiffs' ADA claims, Scrivner contended that plaintiffs were not "disabled persons" under the ADA. Alternatively, Scrivner ar-

---

4. "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Medina v. City & County of Denver,* 960 F.2d 1493, 1495 n. 1 (10th Cir.1992) (quotations omitted).

5. Because of our resolution of this issue, it is unnecessary to address the district court's holding regarding Mr. Milton's failure to exhaust his remedies under the collective bargaining agreement.

gued that plaintiffs were not "otherwise qualified" for their jobs because (1) they could not perform an essential function of the job, and (2) they could not have been reasonably accommodated. Finally, Scrivner argued that plaintiffs failed to offer evidence of intentional discrimination. In response, plaintiffs maintained that they had set forth a prima facie case under the ADA.

In granting Scrivner's motion for summary judgment against Mr. Milton, the district court held that, because Mr. Milton had earlier stated under oath that he was not limited in his ability to work, he had "failed to establish a prima facie case for discrimination under the ADA as he was not a 'disabled person.'" *Milton* Appellant's App. Vol. II at 423. Mr. Massey, in contrast, had argued that defendant's failure to offer him another job before terminating him was evidence of discrimination. The district court held that this claim of disability also failed because Mr. Massey had been unable "'to demonstrate that he is disabled in some more general sense transcending his specific job, that his limitations substantially impair a major life activity.'" *Massey* Appellant's App. Vol. II at 422 (quoting *Bolton*, 836 F.Supp. at 788). Alternatively, in each case, the court found that the new production standards constituted an essential part of the selector job, and that plaintiffs' suggested accommodations were not feasible.

█ In order to sustain a claim under the ADA a plaintiff must establish

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Plaintiffs argue that they are disabled and additionally that they have a record of a disability and were regarded by Scrivner as being disabled. *Milton* Appellant's Br. at 22; *Massey* Appellant's Br. at 21, 25. We do not reach the issue of whether plaintiffs meet the definition of disability under the ADA, because we agree with the district court that neither plaintiff satisfies the second element required of an ADA claimant, namely that they are "qualified individual[s] with a disability," *see* 42 U.S.C. § 12111(8), who are covered under the Act.[6]

"The ADA defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *White*, 45 F.3d at 360 (quoting 42 U.S.C. § 12111(8)). This court has endorsed a two-part analysis for determining whether a person is qualified under the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*Id.* at 361–62 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

The selector job involves taking orders for quantities of warehouse items and loading these items in the correct amounts onto pallets. Plaintiffs' jobs basically amount to

---

6. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

moving items from point A to point B and can involve episodes of heavy lifting. The district court concluded that Scrivner's new production standards (including, by implication, the increased production rate) were an essential function of plaintiffs' jobs. Plaintiffs dispute this conclusion.

The regulations implementing the ADA define essential functions as "those functions that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation." 29 C.F.R. Pt. 1630, App. § 1630.2(n); *see also White*, 45 F.3d at 361 (defining essential functions as those that " 'bear more than a marginal relationship to the job at issue' ") (quoting *Chandler*, 2 F.3d at 1393).

The initial inquiry in determining whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the allegedly essential function. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(n). An employer's judgment is also relevant evidence to be considered, as are the terms of any collective bargaining agreement. *Id.* This inquiry is not intended to second guess the employer or to require him or her to lower company standards. *Id.*

> The ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job. It is the employer's province to establish what a job is and what functions are required to perform it. The ADA simply requires that an individual with a disability's qualifications for a job are evaluated in relation to its essential functions.

EEOC Technical Assistance Manual at II–18 (1992). It is a defense to a charge that a standard screens out disabled persons that the standard is "job-related and consistent with business necessity." 29 C.F.R. § 1630.15(c).

There is evidence in the record that the new production standards were implemented to improve Scrivner's competitiveness in the marketplace. *Milton* Appellant's App. Vol. II at 285; *Massey* Appellant's App. Vol. II at 178. The changes were aimed at increasing efficiency and productivity and have done so. *Milton* Appellant's App. Vol. I at 103; *Mas-*

*sey* Appellant's App. Vol. I at 96. Performing the selector job with speed and quality was viewed by Scrivner's management as essential, and the policy was applied to all selectors. *Milton* Appellant's App. Vol. I at 103; *Massey* Appellant's App. Vol. I at 96. Contrary to plaintiffs' implication, the fact that defendant made changes to its business in order to increase profit is not an impermissible action under the ADA.

Although ordinarily a fact question to be decided on a case-by-case basis, *see* 29 C.F.R. Pt. 1630, App. § 1630.2(n), plaintiffs have presented no evidence to rebut the conclusion that speed is essential to the selector job. Further, because plaintiffs have testified that they cannot meet the new production standards, they are unable to perform an essential function of the job without accommodation. "Thus we must consider whether [plaintiffs have] demonstrated a genuine issue of fact regarding [their] ability to perform the essential functions with reasonable accommodation." *White*, 45 F.3d at 362.

"Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate." *Id.* at 361. The only evidence advanced by plaintiffs to show that accommodation is possible is their unsupported personal conclusions regarding changes to their jobs. We do not decide whether this is sufficient to make a "facial showing that accommodation is possible," *see id.* Instead, we conclude that Scrivner has presented unrebutted evidence of its inability to accommodate plaintiffs' disabilities.

Plaintiffs suggest an altered or reduced production standard for them, the designation of a lighter work load, or allowing them to bid for other jobs within the company that they could perform. We agree with the district court, however, that none of these accommodations are "reasonable." Altering or reducing defendant's production standards or allowing plaintiffs to move only the lighter loads is more accommodation than is reasonable for this defendant.

■ An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(*o*); *Gilbert*

*v. Frank*, 949 F.2d 637, 644 (2d Cir.1991). An accommodation that would result in other employees having to worker harder or longer hours is not required. *See* 29 C.F.R. § 1630.2(p)(2)(v) (impact to other employees on their ability to do their duties is a relevant factor in determining the reasonableness of an accommodation). Slowing the production schedule or assigning plaintiffs lighter loads would fundamentally alter the nature of defendant's warehouse operation, a change not demanded by the law. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(p). Additionally, giving plaintiffs lighter duty is also barred by the collective bargaining agreement.

Plaintiffs' final suggestion, that they be allowed to transfer to another job, is also unreasonable. Initially, we note that Mr. Milton has not provided a description of any other jobs that would accommodate his disability. He merely speculates that he could probably transfer to something else. Mr. Massey vaguely alludes to possible jobs as a warehouseman, a salesman, or a clerk. *Massey* Appellant's App. Vol. II at 276–77. To the extent that any such transfer would be a promotion, the ADA does not require this accommodation from defendant. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(*o*). Additionally, plaintiffs' collective bargaining agreement prohibits their transfer to any other job because plaintiffs lack the requisite seniority.

While we must resolve doubts in favor of the parties opposing summary judgment, plaintiffs' conclusory allegations are insufficient to defeat Scrivner's adequately supported motion. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994). In order to be entitled to the protection of the ADA, plaintiffs are required to demonstrate that they are "qualified person[s] with a disability." *White*, 45 F.3d at 363. Because plaintiffs have produced no evidence that accommodation was possible, the district court properly granted summary judgment to Scrivner.

The judgments of the United States District Court for the Western District of Oklahoma are AFFIRMED.