**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDITH NICHOLSON,

        Plaintiff - Appellant,

    v.

THE BOEING COMPANY, a
corporation,

        Defendant - Appellee.

No. 98-3058

(D. Kansas)

(D.C. No. 94-CV-1235)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , and **McWILLIAMS** , Circuit Judges, and   **COOK** ,** District
Judge.

---

      Plaintiff Edith Nicholson appeals the district court's entry of summary

judgment against her and in favor of defendant The Boeing Company ("Boeing")

on her claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable H. Dale Cook, United States District Court for the
Northern District of Oklahoma, sitting by designation.

§§ 12101-12213, the Kansas Act Against Discrimination ("KAAD"), Kan. Stat. Ann. §§ 44-1001 to -1044, and Kansas common law. [1] Ms. Nicholson alleged that she had not been recalled to service following a lay-off because of a disability, in violation of the ADA and the KAAD, and that Boeing had retaliated against her for filing her KAAD claim. We affirm.

## BACKGROUND

The following facts are undisputed. Ms. Nicholson began working for Boeing in May 1989. She held three positions over the next two years: a "Modification Electrician and Mechanic Field and Hangar C"; a "Manufacturing Helper"; and a "Hand Finisher Milled Spars and Skins." From May 30, 1991, until she was laid off on June 16, 1992, Ms. Nicholson worked as a sheet metal "Assembler-Installer Structures B," which had a job code of #305-04. This job involves "frequent overhead work including locating the frames, drilling from underneath the crown, and drilling the top of the unit [as well as] constant lifting of tools less than 10 lbs (avg = 5 lbs), occasional lifting of material 10-25 lbs and limited lifting of material 25-50 lbs." Appellant's App. Vol. II at 366.

---

[1]In granting summary judgment to Boeing, the court held that Ms. Nicholson had abandoned her claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and Title VII, 42 U.S.C. §§ 2000e to 2000e-17.

Between mid-April and the end of May, Ms. Nicholson received three notices concerning a lay-off. The last of these three notices stated that Ms. Nicholson and a number of other employees would be laid off on June 16, 1992, because of a surplus in their job category. She therefore remained on lay-off status, subject to recall, until her recall rights expired.

On June 2, 1992 (two weeks before her scheduled lay-off), she suffered an injury to her shoulder while working. Because her shoulder was still sore at the end of the following day, Ms. Nicholson went to Boeing's Medical Department, which treated her shoulder and placed her on medical work limitations prohibiting her from lifting more than five pounds, from pushing or pulling, and from working overhead. From June 4 to June 11, 1992, she performed light duties in her work area, in accordance with her medical restrictions. From June 12 until June 16, she and all the other employees in her department scheduled for lay-off worked in Boeing's facilities area. On June 16, as scheduled, Ms. Nicholson and eighty-four other employees with her same job code were laid off.

Ms. Nicholson saw a series of doctors for her shoulder injury. Shortly before she was laid off, Ms. Nicholson was referred by Boeing's Medical Department to Dr. Mary Lynch, whom Ms. Nicholson first saw on July 9. Dr. Lynch diagnosed a sub-acromial spur, a strain of the A corocoid ligament, and a myostatic contracture, and recommended an exercise program along with pain

medication. She also recommended a limitation of no lifting until the shoulder injury was resolved.

In December 1992, on the advice of the attorney representing her in a workers compensation proceeding, she saw another physician, Dr. Harry Morris. Dr. Morris diagnosed impingement syndrome of the right shoulder and, between December 1992 and April 1993, treated her with medication and referred her to a physical therapist. On June 14, 1993, Dr. Morris concluded that Ms. Nicholson had a "permanent partial impairment to the level of the right shoulder of 5%, which is equivalent to 3% of the whole person." Id. at 322. Dr. Morris stated Ms. Nicholson's work status as "[l]imited overhead activity, [no more than] 33% of the time. No other restrictions." Id.

Dr. Ronald Davis of Boeing Medical provided a "Medical Recommendation and Physical Examination Certificate" dated October 12, 1992. This document notes the following "permanent" restrictions: (1) lifting up to ten pounds; (2) limited kneeling, squatting, crawling; (3) no overhead work; (4) no work with hazardous moving machinery; (5) no work with toxic or irritant fumes/dust; (6) no work in extreme temperatures; and (7) no repetitive fine manipulation or pushing/pulling using hand. Id. at 350. Dr. Davis' certificate is central to some of Ms. Nicholson's arguments about Boeing's conduct in this case. As the district court noted, Ms. Nicholson, not Boeing, introduced this document and Boeing has

- 4 -

never relied upon it to establish the degree of Ms. Nicholson's alleged disability. Indeed, in its brief on appeal Boeing agrees the report is inaccurate, disavows knowledge of how it ended up in Ms. Nicholson's personnel file, and concedes the report includes some alleged disabilities and restrictions which seem inapplicable to Ms. Nicholson.

On July 21, 1993, Dr. Lawrence R. Blaty examined Ms. Nicholson and her medical records and wrote a letter diagnosing right shoulder impingement, and recommending that she "avoid any repetitive or prolonged overhead activities[,] . . . [be] restrict[ed] to level lifting, including pushing or pulling activities of more than 30 lbs.[, and] . . . be restricted from the heavy vibratory equipment to no more than three hours a day, at one hour intervals." Id. at 426. He concluded Ms. Nicholson has a "permanent partial impairment of 10% to the level of the right upper extremity[, which] converts to a whole body impairment of 6% for mobility and functional deficits of the right shoulder." Id.

Meanwhile, on October 5, 1992, Boeing informed Ms. Nicholson by letter and by phone that it was recalling her to work and requested information about her medical condition and any related restrictions. Ms. Nicholson's personal physician opined at the time that Ms. Nicholson should be restricted to "ten pounds weight lifting" and "no push-pull or overhead lifting for the next four

weeks." Appellant's App. Vol. I at 128. Ms. Nicholson relayed this information to Boeing.

Ms. Nicholson also spoke at this time to Galen Allen from Boeing's employment office, who asked Ms. Nicholson if she would be able to return to the particular job (Assembler-Installer Structures B) from which she had been laid off. Ms. Nicholson informed Mr. Allen that she could not return to that position, with or without accommodation, because of the amount of overhead work involved. [2] She volunteered, however, to take another position that would accommodate her restrictions, and she testified Mr. Allen told her there were none. Mr. Allen filled out a one-page "Reasonable Accommodation Review Form" during this telephone conversation, documenting Ms. Nicholson's responses to his questions concerning her ability to perform her former position.

On October 27, 1992, Boeing sent Ms. Nicholson the following letter:

---

[2]Ms. Nicholson testified in her deposition as follows:

Galen Allen from the employment office . . . ask[ed] me what—about accommodations of the job and I asked him which job, if it was just the whole general area of sheet metal installer and he said, "no, the particular job that you were doing when you were laid off, could you do that job with your restrictions?" I told him I did most overhead work in that job and no, I don't think I could be—there was nothing—I could not go back to that job at the present time with my restrictions.

Appellant's App. Vol. I at 181.

You were recently recalled as an Assembler Installer Structures.

As a result of the completed medical evaluation and a Reasonable Accommodation Review, it has been determined that you are unable to perform the essential functions of the proposed job. This information has been reviewed and approved by the Boeing Wichita Reasonable Accommodation Review Board.

This letter is to advise you that until your medical condition changes, you will remain on lay-off status through the expiration of your Category A rights.

Appellant's App. Vol. II at 441.

In March 1993, the Human Factors and Ergonomic Development ("HF") division at Boeing prepared a "Review of Edith Nicholson." This report analyzed whether Ms. Nicholson could be reasonably accommodated, with her shoulder injury, in the Assembler Installer Structures position which she had held prior to being laid off, and to which she had been recalled unsuccessfully in October 1992. The report summarized as follows:

1. No overhead work with right arm—no work with arm above shoulder level.

The job requires frequent overhead work including locating the frames, drilling form underneath the crown, and drilling the top of the unit. There is no way to reasonably accommodate this limitation.

2. Five (5) lb weight limit right arm.

The job requires constant lifting of tools less than 10 lbs (avg = 5 lbs), occasional lifting of material 10-25 lbs and limited lifting of material 25-50 lbs. There is no way to reasonably accommodate this limitation.

Id. at 366.

On September 30, 1993, GRS Rehabilitation Services, Inc. produced a "Job Analysis Report" of Ms. Nicholson's former job. This report also stated the job could not be modified, and opined: "This position requires overhead work, lifting above shoulder height. The lifting requirement is to place skins on tool and to load tool from underneath. This last duty is heavy lifting while walking 10 to 15 feet, stepping up 3 stairs and lifting the tool overhead to be positioned in place." Id. at 334. The report further stated: "I do not see any possible accommodations in this position unless another worker would be assigned to lift the skins and the tool when needed. This probably would not be a feasible accommodation due to having to take someone from their work to do so." Id.

On January 13, 1994, Ms. Nicholson sent to Boeing a letter stating that her "condition had improved and [she was] able and available to work." Id. at 436. She did acknowledge, however, that she still had an "injury with restrictions" but that it was "not totally debilitating." Id. Boeing responded that her initial layoff was due to a reduction in force, not because of her medical restrictions, and that it would consider her for job openings as they arose, along with others on layoff status.

On November 1, 1994, Boeing sent to Ms. Nicholson a letter containing the following:

> You were recently notified for possible recall to the position of Modification Electrical & Mechanical F&H B. A review has been

completed by the Boeing Wichita Accommodation Review Board regarding your return to work status. As assessment of your current medical condition and the essential functions of the job has been evaluated. As a result of this information, it has been determined and approved by the Accommodation Review Board, that you are medically unable to perform the work assignment and no reasonable accommodation is possible.

Id. at 443. She was therefore not recalled to any job in October/November 1994.

Ms. Nicholson's shoulder has improved, although overhead work is still problematic. When asked at her deposition on November 2, 1994, how her injury was, she responded:

A. It still bothers me once in a while but if I just watch what I do and kind of rest it when I need to, I can do anything I want, just about. Well, except overhead.
Q. So even today overhead work would be a problem for you?
A. Yes. Yes. As long as I – you know, I couldn't do it continuously. If I'd take breaks I would be all right probably.

Appellant's App. Vol. I at 175. She eventually settled her workers compensation claim for $32,000.

On December 7, 1992, Ms. Nicholson filed a disability discrimination claim with the Kansas Human Rights Commission (KHRC), as well as the EEOC, alleging that Boeing had discriminated against her when it laid her off in June 1992 and failed to recall her in October 1992. The KHRC determined in December that no probable cause existed to support her allegations and closed her case. The EEOC also found her claim without merit and issued a notice of right-to-sue. This action followed. Ms. Nicholson was rehired by Boeing in March

1996 as a "Hand Finisher" and was subsequently upgraded to a "Plastic Bench Mechanic" in May 1997, where she continues her employment, apparently without problem.

## DISCUSSION

The district court granted summary judgment to Boeing. "We review the grant of summary judgment de novo, examining the record and the reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." Templeton v. Neodata Servs., Inc., 162 F.3d 617, 618 (10th Cir. 1998). Summary judgment is granted "only when the evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

The district court granted summary judgment to Boeing, holding that, at the time of her recall, October 5, 1992, she was "not qualified to perform the essential functions of the same position for which she was recalled." Appellant's App. Vol. II at 562. The court then concluded that Ms. Nicholson failed to establish the existence of a genuine issue of material fact as to whether she could perform the essential functions of that position with reasonable accommodation. In doing so, it held that the record before it clearly showed that Boeing could not have reasonably accommodated Ms. Nicholson in her previous position and that Ms. Nicholson failed to carry her burden of producing evidence that a vacant

position existed whose essential functions she could have performed. It therefore concluded that Ms. Nicholson is not a qualified individual under the ADA and granted summary judgment to Boeing on both her ADA and KAAD claims, as well as her retaliatory discharge claim. The court did not address any claim of discrimination in connection with any 1994 recall.

Ms. Nicholson argues that Boeing medical and other personnel essentially overstated the degree and permanence of her shoulder injury, and then relied upon that inaccurate perception to determine that she was disabled and could not perform the essential functions of her former (and her recall) job or jobs, with or without reasonable accommodation. [3] She further argues that Boeing failed to engage in good faith in the required interactive process to determine whether she could be reasonably accommodated either in her former (and recall) jobs or by assignment to a vacant position. [4]

Boeing appears to argue that Ms. Nicholson had neither a disability nor a record of a disability, nor was she regarded by Boeing as disabled, and she

[3]In support of her argument that Boeing intentionally overstated the extent of her impairment, Ms. Nicholson refers repeatedly to the Dr. Davis report. As Boeing argues, however, there is no evidence that the report influenced any of Boeing's decisions with respect to Ms. Nicholson. Thus, while Ms. Nicholson gives it considerable importance as evidence of Boeing's unlawful conduct, we essentially ignore it.

[4]Ms. Nicholson does not argue that her original lay-off was a violation of the ADA, nor could she in view of the fact that it occurred prior to the ADA's effective date.

- 11 -

therefore had no right to reasonable accommodation in her former job or accommodation by way of transfer to a vacant job.

To overcome Boeing's motion for summary judgment, Ms. Nicholson must show initially that she was disabled and that she was a "qualified individual." See Aldrich v. The Boeing Co., 146 F.3d 1265, 1271 (10th Cir. 1998), petition for cert. filed, 67 U.S.L.W. 3376 (U.S. Nov. 23, 1998).  While the parties appear to argue, often at cross-purposes, about whether Ms. Nicholson had a "disability" under the ADA, we decline to reach that issue because we agree with the district court that she fails to satisfy the second element of an ADA claim—i.e., that she is a "qualified individual with a disability."  42 U.S.C. § 12111(8); see Milton v. Scrivner, Inc., 53 F.3d 1118, 1123 (10th Cir. 1995).

We conduct the following analysis to determine whether an individual is qualified under the ADA:

> "First, we must determine whether the individual could perform the essential functions of the job. . . .  Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions."

Aldrich, 146 F.3d at 1271 (quoting White v. York Int'l Corp., 45 F.3d 357, 361-62 (10th Cir. 1995)).  Workers seeking to be recalled from lay-off are included. [5]

---

[5] 29 C.F.R. § 1630.4 provides as follows:

(continued...)

## I. Could Ms. Nicholson Perform the Essential Functions of Jobs?

### A. 1992 Recall

At the time of her first recall notice, in 1992, Ms. Nicholson admitted she could not perform the assembler-installer job to which she was being recalled. Now, however, she argues that overhead reaching was not an essential function of that job and/or that the job could have been restructured to eliminate overhead work for Ms. Nicholson by redistributing it among other members of her team.

The district court concluded that the undisputed facts established that overhead work was an essential function of the job to which she was recalled in October 1992. We agree. Both the HF and the GRS reports analyzing the assembler-installer job stated that it involved frequent overhead work and frequent lifting of tools of 5 pounds and more. Ms. Nicholson's own expert on rehabilitation, Wilbur Swearingin, testified that he concurred in those aspects of those reports. Appellant's App. Vol. I at 261. The reports also stated that accommodation to eliminate or substantially reduce overhead work for Ms. Nicholson in that job was not feasible. Thus, we agree with the district court that

---

[5](...continued)
It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to:

. . . .

  (b) Hiring, . . . [and] right of return from layoff . . . .

the undisputed facts establish that overhead work was an essential function of the assembler-installer job to which Ms. Nicholson was being recalled, and that Ms. Nicholson, by her own admission, was unable to perform overhead work at the time of her October 1992 recall.

### B.    1994 Recalls

Although the focus of this appeal is the October 1992 recall, Ms. Nicholson also alleges, with less specificity, that there were other recalls in May and November 1994, and she was discriminatorily not rehired at those times.  She did not present those claims to the EEOC or the KHRC, as indeed she could not have, since they occurred after those proceedings were concluded.  This action was filed on June 15, 1994.  The complaint included no claims based on those recalls, although Ms. Nicholson made arguments concerning them in her filing in opposition to Boeing's summary judgment motion.  The district court did not address them, and Boeing urges us to ignore them as well.  We agree with Boeing that we could ignore any claim of discrimination relating to those recalls.  Ms. Nicholson may not use her response to summary judgment as a substitute for formally amending her complaint.    See Fed. R. Civ. P. 15.

However, were the issue squarely before us, Ms. Nicholson would still not prevail.  We affirm the grant of summary judgment to Boeing with respect to

those recalls, because the record permits an adequate determination of whether there are any disputed material facts concerning Ms. Nicholson's qualifications for any jobs involved in those recalls.

Ms. Nicholson's allegations concerning the May recall are extremely conclusory, and certainly insufficient to raise a disputed factual issue about her qualifications. [6] With respect to the October/November 1994 recall, Ms. Nicholson's own communication to Boeing, in January 1994, acknowledged that she still had a limiting injury. Boeing's job analysis of the MOD mechanic job to which the recall applied stated that the job required "frequent overhead work" as well as "constant use of power/vibratory tools." Appellant's App. Vol. II at 340. The most recent medical evaluation, Dr. Blaty's, indicates that she could not perform that job. Even Dr. Morris' evaluation, which Ms. Nicholson prefers but which is not inherently more reliable that Dr. Blaty's, recommends limited overhead work, which supports the conclusion that Ms. Nicholson's medical restrictions would make it difficult for her to perform the MOD mechanic job. [7]

_____

[6]In her appellate brief she states "Nicholson has learned that Boeing had vacant positions for work on Air Force I in or around May 1994." Appellant's Br. at 39. Her record citation, to her affidavit filed in opposition to Boeing's summary judgment motion, is equally vague and conclusory: "It is my understanding that Boeing had an "Air Force One" recall sometime around May 1994, but I was not recalled at that time." Appellant's App. Vol. I at 158.

[7]To the extent Ms. Nicholson relies upon her deposition testimony, taken in November 1994, that her only real restriction then was overhead work, we remind
(continued...)

The report further states that there was no way to accommodate the medical restrictions listed in Ms. Nicholson's files. Ms. Nicholson does not specifically refute that conclusion. Thus, Ms. Nicholson was indisputably unable to perform the essential functions of the job or jobs which were available to recall in 1992 and/or 1994.

## II. Reasonable Accommodation

We must next consider whether Ms. Nicholson would have been able to perform the essential functions of any of the recall jobs, with reasonable accommodation. For summary judgment purposes, we consider whether Ms. Nicholson has demonstrated the existence of a genuine issue of material fact regarding her ability to perform those functions with reasonable accommodation.

As the district court observed, whether or not the HF report, or any other documents in Boeing's personnel file concerning Ms. Nicholson's medical restrictions, overstated or inaccurately reported the extent and duration of Ms.

---

[7](...continued)
her that there is no evidence that she told Boeing that her shoulder had improved to where her only limitation was doing overhead work. Moreover, no medical documentation supports the suggestion that Dr. Blaty's restrictions had become too severe by that time. See Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1134 (7th Cir. 1996) (noting that "the [ADA] requires only reasonable accommodations 'to the known physical or mental limitations' of an employee") (quoting 42 U.S.C. § 12112(b)(5)(A)).

Nicholson's impairment, it is indisputable that she was unable to do any measurable overhead work, and overhead work was an essential function of the jobs to which Boeing recalled her in 1992. The HF and the GRS report specifically state that modification of the 1992 job to accommodate Ms. Nicholson's inability to do overhead work was not possible, and the GRS report lists the only possible accommodation as taking another worker to perform Ms. Nicholson's overhead work. Ms. Nicholson presents no concrete evidence controverting these statements. "An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job." Milton, 53 F.3d at 1124. The report on the 1994 recall job also indicates accommodation is not possible, particularly with respect to her documented limitation on use of power tools.

We therefore agree with the district court that she failed to establish the existence of a disputed material fact regarding the possibility of accommodation in the job to which she had been recalled in October 1992. Although the district court did not address it specifically, we also fail to find a disputed material fact regarding the possibility of accommodation to the 1994 job.

Even though reasonable accommodation was not possible by restructuring the particular recall jobs, reassignment to a vacant position whose essential functions Ms. Nicholson could perform is another possible means of

- 17 -

accommodation. See White, 45 F.3d at 362 (observing that "reassignment may be considered as a reasonable accommodation"). Of course, Ms. Nicholson must first notify Boeing of her desire to be reassigned, which she did in her conversation with Mr. Allen. Once reassignment is considered, there needs to be a reasonable interactive dialogue between the employer and the employee or, as here, the laid off former employee. See Templeton, 162 F.3d at 619 ("The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'") (quoting Beck, 75 F.3d at 1135). To survive summary judgment on this issue, Ms. Nicholson must offer something "beyond [her] own subjective opinion that [s]he could perform various other jobs at [Boeing]." White, 45 F.3d at 362.

The undisputed facts show that Boeing and Ms. Nicholson engaged in the required interactive process. Boeing was well aware of Ms. Nicholson's medical restrictions. Ms. Nicholson indicated to Boeing in her conversation with Mr. Allen that she wished to be rehired, perhaps in another position than the one to which Boeing was considering recalling her. Boeing informed her there were no suitable vacancies at that time. She did not directly communicate with Boeing again about her desire to be recalled until January 1994, when she again expressed a desire to be rehired but noted that she still had a limiting injury. She provided no medical update of her condition. Boeing responded by again

considering her for recall in October 1994, but again determined, after reviewing her known medical restrictions, which she had not updated, that she could not perform the particular job and no others were available. Ms. Nicholson has not rebutted Boeing's showing that that interactive process occurred.

She has also failed to meet her summary judgment burden with respect to the existence of other suitable jobs. She cannot simply refer to the numerous other jobs with the same job code as her job, or jobs generally which she believes she could perform. She cannot simply invoke Boeing's size and say, in effect, "there must be a job somewhere out there that I can perform." Her own rehabilitation expert, Wilbur Swearingin, opined that Ms. Nicholson had "specialized capabilities in nineteen work areas." Appellant's App. Vol. II at 401. However, he could not identify particular jobs at Boeing to which those capabilities applied, let alone whether there was any reason to believe that any were vacant at the relevant times. Appellant's App. Vol. I at 263. We agree with the district court that she "cites no evidence to support that either (1) a 305-04 position without the overhead work existed or (2) that such a position, if it existed, was available at the time of her recall. Her failure to provide any evidence that another position was available at the time of her recall fails a necessary element of the accommodation burden: showing an available position." Appellant's App. Vol. II at 566. She similarly fails to present any evidence of

available positions in 1994 which she could perform.     See Milton , 53 F.3d at 1125 (observing that vague allusions to other jobs insufficient to show accommodation was possible).

Boeing, by contrast, points to a memorandum prepared in October 1992 which recites her medical restrictions at that time and states that, because of those restrictions, "there are no other positions available in Assembly, or the Fuselage Responsibility Center, that she could perform." Appellant's App. Vol. II at 440. And, of the other employees laid off at the same time as Ms. Nicholson, 58 were rehired around the time of the October 1992 recall to the same position Ms. Nicholson had held and which she admitted she could not at that time perform. Three others were recalled at that time to different positions, about which she does not present any evidence of her ability to perform, given her medical restrictions. Four were recalled in late 1994 to a MOD mechanic job position with the same job code as the MOD mechanic job which Boeing determined Ms. Nicholson could not perform with or without accommodation.

In the face of Ms. Nicholson's clear admission to Boeing that she could not perform the particular job to which she was being recalled in 1992, and in the face of the medical restrictions in Boeing's file in 1992, 1993 and 1994 which she did nothing to contradict, Ms Nicholson has failed to produce anything more than vague suggestions that there were other jobs available which she could perform.

Accordingly, we affirm the grant of summary judgment to Boeing, concluding, as did the district court, that the undisputed facts show that Ms. Nicholson was not a qualified individual under the ADA. [8]

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[8]Having granted summary judgment to Boeing on Ms. Nicholson's ADA claim, the district court also granted summary judgment on her KAAD claim because the standards are the same. Ms. Nicholson does not disagree with the conclusion that the standards are identical. Accordingly, having affirmed the grant of summary judgment on Ms. Nicholson's ADA claim, we also affirm that grant with respect to her KAAD claim. She makes no argument on appeal concerning the district court's grant of summary judgment on her retaliatory discharge claim under the KAAD and Kansas common law. We therefore do not address them.