BRISCOE, Circuit Judge,
dissenting:
I respectfully dissent. First, I would conclude Tate was qualified because Farmland conceded that issue in a request for admission. Second, I would conclude there was a genuine issue of material fact as to whether Tate was regarded as disabled by Farmland. Third, Tate cannot state a claim under the FMLA because his only argument on appeal is that he had a nonlimiting medical condition that was perceived as limiting.
As stated by the majority, to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate, “ ‘(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified-with or without reasonable accommodation; and (3) that [he] was discriminated against because of [his] disability.’” McKenzie v. Dovala, 242 F.3d 967, 969 (10th Cir.2001) (quoting Aldrich v. Boeing Co., 146 F.3d 1265, 1269 (10th Cir.1998)). See Majority Op. at 992. Tate contends he was disabled as defined by the ADA because Farmland regarded him as having a physical impairment that limited one or more of his major life activities. See 42 U.S.C. § 12102(2)(c). He argues throughout that he does not have a limiting impairment.
I.
The majority concludes that Tate was not a “qualified individual” as defined by the ADA. Whether a person is “qualified” under the ADA is a two-step analysis:
First, we must determine whether the individual could perform the essential Junctions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.
Milton v. Scrivner, Inc., 53 F.3d 1118, 1123 (10th Cir.1995) (emphasis added). In response to Tate’s first set of requests for admission, Farmland admitted “that at the time [Tate’s] employment was terminated by [Farmland], [Tate] was physically and mentally able to perform the essential functions of his job with [Farmland].” ApltApp. at 233 (emphasis added). This admission tracks the language in Milton. Although Tate argued before the district court that this admission was binding, Farmland did not formally address the issue. It only discussed the merits of whether Tate was a qualified individual. Similarly, the district court ruled on the merits. On appeal, notwithstanding this admission, Farmland argues that one of the “essential functions” of Tate’s job was meeting the heightened “physical” standards set forth by the DOT regulations. See Aple. Br. at 10.
Once a party makes an admission, the fact is “conclusively established.” See Fed.R.Civ.P. 36(b). A party may not obtain relief from its admission unless “the court on motion permits withdrawal or amendment of the admission.” Id. Farmland does not argue it should not be bound by its admission. Absent such relief being *999 granted by the district court, it has been conclusively established that Tate was a “qualified individual” as defined by the ADA.[1]
II.
There are two ways a plaintiff can show he or she was “regarded as” having a disability. First, he or she can show “a covered entity mistakenly believes that the person has a physical impairment that substantially limits one or more major life activities.” Doyal v. Okla. Heart, Inc., 213 F.3d 492, 499 (10th Cir.2000) (internal quotations omitted). Second, he or she can show “a covered entity mistakenly believes that the person’s actual nonlimiting impairment substantially limits one or more major life activities.” Id.
Tate invokes the latter. Although before the district court he only contended he “was regarded by [Farmland] to have a physical impairment that substantially limited one or more of his major life activities,” ApltApp. at 207, on appeal he tailors his contention to better conform with case authority by contending “Farmland mistakenly believed Tate’s nonlimiting medical condition substantially limited one or more of his major life activities.” Aplt. Br. at 28. For Tate to recover under this theory, “it is necessary that [the employer] entertain misperceptions about the individual-it must believe ... that [the individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting.” Doyal, 213 F.3d at 499.
To prevail on his claim that there was a genuine issue of material fact as to whether he was regarded as disabled, Tate must identify the “nonlimiting medical condition” he was perceived as having, and the “major life activity” it was perceived to substantially limit. On appeal, Tate alleges three major life activities were implicated-working, driving, and maintaining consciousness. We should not consider “maintaining consciousness” because Tate did not assert this claim before the district court. We need not determine whether “driving” is in itself a major life activity because working is clearly a major life activity under the ADA See Davoll v. Webb, 194 F.3d 1116, 1134 n. 11 (10th Cir.1999). Since Tate has identified one recognized major life activity, I next address whether he had a nonlimiting medical condition that was perceived as substantially limiting his ability to work.
Was Tate’s taking of Dilantin the medical condition that was nonlimiting, but perceived by Farmland as limiting? Farmland first had information that Tate was taking Dilantin in November 1996 when it received the 1996 certificate provided by Tate’s medical examiner. In response to the instruction to “[l]ist all drugs or medications taken regularly,” the following is written: “Dilantin 400qd — as precautionary measure for past history of Lymes Disease.” ApltApp. at 115. Farmland, however, took no action at that time. Tate’s file was flagged and a memorandum was sent by the occupational health coordinator to two safety managers because of a discrepancy between the 1996 and 1997 *1000 certificates. On the 1997 certificate, Tate checked the “Yes” box for “[s]eizures, fits, convulsions or fainting” and as an explanation stated he had seizures that resulted from Lymes Disease. ApltApp. at 118. The “No” box had been checked for 1996. The 1997 certificate also noted Tate still was taking 400 milligrams of Dilantin per day. Out of concern raised by Tate’s notation regarding seizures, Farmland researched the medication and noted Dilan-tin “is prescribed only for seizure control.” ApltApp. at 335.
The evidence suggests that Farmland was not concerned exclusively with Tate’s intake of Dilantin. Rather, Farmland was concerned that Tate suffered from a “medical condition” and that Dilantin was taken to combat the seizures resulting from that medical condition. Tate argued before the district court and argues on appeal that he was fired “because of [Farmland’s] misper-ceptions of his medication and medical condition.” ApltApp. at 207; Aplt. Br. at 5. On appeal, he continues his focus on both the medication and his medical condition.
The district court granted summary judgment to Farmland because (1) Farmland “viewed [Tate] as not being certifiable” rather than being disabled, and (2) Farmland did not view him as disqualified from a class of jobs or a broad range of jobs. Aplt.App. at 754. However, whether Tate was certifiable “goes only to whether [he] is qualified and whether [Farmland] has a defense based on the DOT regulations.” Murphy, 527 U.S. at 522-23, 119 S.Ct. 2133. Accordingly, the district court’s emphasis on qualifications when- discussing disability was error.
Rather, the district court’s focus should have been on whether the plaintiff showed that the employer believed he had “a substantially limiting impairment when, in fact, the impairment is not so limiting.” Doyal, 213 F.3d at 499 (quotation omitted). “[T]he EEOC defines ‘substantially limits’ as: ‘significantly restricted in the ability to perform either a class of. jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.’” Murphy, 527 U.S. at 523, 119 S.Ct. 2133 (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). “The evidence that petitioner is regarded as unable to meet the DOT regulations is not sufficient to create a genuine issue of material fact as to whether, petitioner is regarded as unable to perform a class of jobs utilizing his skills.” Id. at 524, 119 S.Ct. 2133. Accordingly, Tate must be able to show that Farmland perceived him as significantly restricted from performing either a class of jobs or a broad range of jobs.
Viewing the facts in the light most favorable to Tate, there is a genuine issue of material fact as to whether he was perceived as significantly restricted from performing a broad range of jobs. Jack Curry, Farmland’s manager of hazardous materials and safety, stated that Farmland owned several non-commercial motor vehicle trucks and that he believed it would have been unsafe for Tate to drive one of those trucks. ApltApp. at 310-11. This evidence indicates Farmland perceived Tate as restricted from performing a broad range of jobs.
III.
The majority concludes that Farmland was on notice that Tate might qualify for FMLA benefits when Farmland placed him on involuntary leave for health reasons. The majority reverses the district court’s dismissal of Tate’s FMLA claim and remands for further consideration. The FMLA entitles an “eligible employee” “to a total of 12 workweeks of leave during any 12-month period” when the employee has “a serious health condition that makes *1001 the employee unable to perform the functions of the position of such employee.” 29 U.S.C. § 2612(a)(1)(D). I would affirm the district court’s dismissal of the FMLA claim because Tate does not allege his health condition made him unable to perform the functions of his position.
I agree with the majority that Tate’s failure to allege he was an eligible employee should not result in dismissal with prejudice of his claim. The second step in determining whether Tate can invoke the FMLA is evaluating whether he had a “serious health condition,” as defined by the statute, that made him unable to perform the functions of his position. For purposes of thé Act, the term “serious health condition” means:
an illness, injury, impairment, or physical or mental condition that involves—
(A) inpatient care in a hospital, hospice, or residential medical care facility; or
(B) continuing treatment by a health care provider.
29 U.S.C. § 2611(11). Tate argued before the district court that his “medical condition and his physician’s continuing treatment of it with the prescription medication, Dilantin, constituted a ‘serious health condition’ under the FMLA.” Aplt. App. at 741. Arguably, seizures are a serious health problem. To have standing under the FMLA, however, the serious health condition must “make[ ] the employee unable to perform the functions of the position of such employee.” 29 U.S.C. § 2612(a)(1)(D). Tate satisfied this standing requirement by summarily pleading that his seizures were a serious health condition which required him to miss work for three or more consecutive days.[2] However, as regards his FMLA claim, Tate has consistently argued that despite his medical condition he was able to perform the functions of his job, ApltApp. at 720 ¶ 9(f), Aplt. Br. at 22, and that Farmland fired him because it perceived him as “disabled” and “medically disqualified” to perform his job. ApltApp. at 720 ¶ 9(e). Tate essentially asserted his FMLA claim as an alternative claim should the court conclude he was not “medically qualified” to perform his job when he was fired. Id. ¶ 9(h).
On appeal, Tate proceeds under the theory that Farmland regarded him as disabled; specifically, that he had a nonlimit-ing condition that Farmland perceived as limiting. Aplt. Br. at 55. There is no provision of the FMLA that would allow him to recover because he was only “regarded as” having a serious medical condition that made him unable to perform his job when he actually did not.
I would reverse the district court’s grant of summary judgment on the ADA claim and affirm the district court on the FMLA claim.

. In response to a requested admission "that at the time his employment was terminated by [Farmland], [Tate] had all governmental licenses and certifications necessary for him to perform his job with [Farmland],” Farmland "[a]dmitted that [Tate] held a DOT Certification Card, but he was not a qualified driver under DOT Regulations and FHA regulations and interpretations.” Aplt.App. at 232. It is questionable whether this response could negate the previously-quoted admission which refers to Tate’s ability to perform the essential function of his Farmland job. At best, there is a genuine issue of material fact as to whether Tate was qualified.

. Missing more than three consecutive calendar days of work is a required showing for someone who contends he or she is undergoing continuing treatment for an illness. See 29 C.F.R. § 825.800.