Filed 11/3/15  Duarte v. The Vons Companies CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VIRGILIO DUARTE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE VONS COMPANIES, INC.,<br><br>    Defendant and Respondent. | B255126<br><br>(Los Angeles County<br>Super. Ct. No. BC491358)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 14, 2015 be modified as follows:

On page 14, the second sentence of the first full paragraph, is modified to read,

The **job description for the baker** refers to the baker mixing and baking and dumping ingredients and obtaining the necessary ingredients from storage areas.

Appellant's Petition for Rehearing is denied.  No change in judgment.

_____

MOSK, Acting P. J.                    KRIEGLER, J.                    BAKER, J.

Filed 10/14/15  Duarte v. The Vons Companies, Inc. CA2/5 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VIRGILIO DUARTE, | B255126 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC491358) |
| v. | |
| THE VONS COMPANIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Steven J. Kleifield, Judge.  Affirmed.

Livingston Bakhtiar, Ebby S. Bakhtiar; Shegerian & Associates, Inc. and Carney R. Shegerian for Plaintiff and Appellant.

Haynes and Boone, Tamara I. Devitt, Kimberly A. Chase for Defendant and Respondent.

## INTRODUCTION

Plaintiff and appellant Virglio Duarte (Duarte) worked for defendant and respondent The Vons Companies, Inc. (Vons) as a baker. Duarte suffered a work-related injury that restricted his ability to use his left arm. Vons rescheduled Duarte for 12 weeks to a shift at which he had access to a "baker's helper," who did the lifting, pushing and pulling that the baker usually does. Thereafter Vons put Duarte on an involuntary leave of absence, based on a policy of a 12-week limit on modified duties. Vons investigated another position for Duarte that turned out to be unavailable. After a lengthy leave of absence, Vons terminated Duarte. Duarte contends he was not accommodated properly, Vons failed to engage in a good faith interactive process, and he was harassed because of his disability. Duarte brought claims under Government Code sections 12900 et seq. (FEHA),[1] as well as other causes of action. Vons moved for summary judgment arguing there was no triable issue of fact. The trial court granted a summary judgment in favor of Vons, from which judgment Duarte appeals. We affirm.

## BACKGROUND[2]

Vons is a subsidiary of Safeway and has approximately 275 to 277 stores in California that are organized by districts. Most of the districts have between 15 and 20 stores. Five or six stores are located in the Los Angeles County District. Duarte, a 59-year-old male, began working as a baker for Vons in 1990 and worked in various stores throughout Southern California. There are indications he rose to a journeyman baker. In 2009, Duarte injured his left shoulder while working. On May 13, 2009, his medical

---

[1]   All further statutory references are to the Government Code, unless otherwise specified.

[2]   We state the facts consistent with the standard of review for summary judgments.

2

professional at first restricted him from using his left shoulder for pulling, pushing, lifting, or carrying more than five pounds, which restrictions Duarte transmitted to Vons.

For the period from May 14, 2009, until June 13, 2009, Vons changed Duarte's shift to one at which there was a baker's helper, who brought and moved heavy items, such as ingredients. The helper also pushed and pulled all of the product carts. The helper constantly had to help Duarte lift and move items. Duarte performed satisfactorily both before his injury and when working with assistance of the helper. On June 13, 2009, Von's terminated Duarte in connection with a dispute with another employee, but he was reinstated on August 17, 2009, as a result of a union grievance procedure. Duarte was placed on an involuntary leave of absence on September 4, 2009, and he never returned to work thereafter. On October 5, 2009, Vons received another doctor's report on Duarte listing some work restrictions—no overhead reaching with the left shoulder and no pushing, pulling, or lifting more than 10 pounds.

Vons generally offers up to 12 weeks of what it calls modified duty to employees who have a workers' compensation injury. If the employee continues to have work restrictions after 12 weeks, he or she is taken off this modified duty and put on temporary disability—in this case involuntarily. Therefore, Duarte could not continue working after a 12-week modified duty program, which he completed. Vons does not consider the modified duty as an accommodation because "it's not a permanent fix for the employee." Once an employee is deemed permanently disabled and stationary, then efforts at an accommodation are made. Vons gave no reason why Duarte could not have continued in his position with the accommodation of the helper. Vons admitted that an extension of the 12-week modified duty program would not have placed undue hardship on Vons' business operations.

In September, 2009, Duarte's physician imposed stricter work restrictions—he could not use his left arm at all. Duarte continued to provide medical reports regarding his condition and progress, including a restriction of no lifting with the left arm of more than 10 pounds. On March 26, 2010, Duarte's physician concluded Duarte's condition had become permanent and stationary, and he was restricted to not using the shoulder for

3

overhead reaching or pushing, pulling, or lifting more than 10 pounds with his left arm.

At no point did the physician lift the restriction. Vons's Accommodations Committee wrote Duarte in April 2010 after receiving a medical report providing for medical restrictions. The Committee said it was going to explore accommodations through an "interactive effort." Duarte submitted an "Employee Input Form" dated April 19, 2010, in which he said he wanted to work in his current position with the following accommodations: "Additional help with pushing, pulling and or lifting of items" Vons's Accommodation Committee determined there was no reasonable way to modify the baker position to allow Duarte to perform the essential functions of his job with the restrictions prescribed by the physician. So the Committee continued the leave of absence to look for alternative positions for Duarte within the district.

Notwithstanding that Duarte had performed adequately with the helper, Vons concluded he could not be accommodated in his current position as a baker and determined that it would seek for him a position in the district at a service desk at a fuel station without a convenience store. Vons did not consider districts other than the one in which Duarte lived. Such a position would have required Duarte, inter alia, to "handle items of varying weights," "assist elderly or handicapped customers with fueling their vehicles," "stock oil and windshield washer," and ground level fuel and inspect seals." Some of the tasks involved lifting items that weighed as much as 50 pounds, carrying items up to 35 pounds, pushing and pulling items up to 35 pounds, and reaching overhead for items.

No such position was found, however, because there were no fuel stations in the district searched. Vons conceded that between October 6, 2009, and March 1, 2010, when Duarte was on the compelled leave of absence, no one contacted him in an effort to engage him in an interactive process and no accommodations were offered. There had been no actual interactive process earlier or before he was placed on a leave of absence. Vons did not consider alternative accommodations, although it claims there were none. Vons considered the leave of absence as the only reasonable accommodation.

4

Vons concluded that Duarte could not be accommodated as a baker, even though in essence he had been for 12 weeks. In September 2010, Duarte submitted another request to be accommodated as a baker. Between June 25 and September 10, 2010, Vons received two medical notes releasing Duarte to work with the same or similar restrictions as before.

In August 2010, Vons notified Duarte that his leave of absence entitlement would expire on September 5, 2010, and if he did not return by that date, he would be terminated. There were exceptions to allow for more than one year of leave if there was a qualifying disability and approval on or after a brief extension and the employee could return to work and perform the essential functions. In Duarte's accommodation report, his physician circled "no" to the question, "Is this patient able to work with or without accommodation?" The doctor explained this response by saying "his job wouldn't be his job if he was doing it with accommodations" and he could do his job with accommodations.

The Vons Accommodations Committee extended his leave of absence until November 1, 2010, and the doctor extended Duarte's disability for another six weeks. On November 12, 2010, Duarte's doctor reported that Duarte remained unable to work and would be "temporarily totally disabled" for another six weeks. On November 24, 2010, the Vons Accommodations Committee determined it was "unable to grant any further extension." It said that Duarte had "gone beyond his contractual limits" and it "didn't look like he was going to be coming back to work." That day Vons sent Duarte a letter saying he would be terminated. He was terminated on December 3, 2010, after 15 months of leave—a date beyond the one year leave requirement set forth in the collective bargaining agreement. An agreed medical examiner concluded on September 2, 2011, that Duarte was permanent and stationary with work restrictions. Vons never reinstated Duarte with accommodations.

Different Vons stores have variations in the bakery personnel. Some stores have more bakers than others, some stores have a baker and a baker's helper, and some stores have a baker's manager. In some stores, the baker's helper is on a particular shift.

5

The baker's role is to mix and bake bakery products. Vons's job description of a baker is as follows: "As a key contact for Safeway, Inc. customers, provides friendly, courteous and helpful service. [¶] Mixes and bakes ingredients according to recipes to produce breads, pastries, and other baked goods. [¶] Measures flour, sugar, shortening, and other ingredients to prepare batters, dough, fillings, and icings, using scales and graduated containers. [¶] Dumps ingredients into mixing-machine bowl or steam kettle to mix or cook ingredients according to specifications. [¶] Rolls, cuts and shapes dough to form sweet rolls, pie crusts, tarts, cookies, and related products preparatory to baking. [¶] Places dough in pans, molds or on sheets and bakes in oven or grill. [¶] Observes color of products being baked and turns thermostat or other controls to adjust oven temperature. [¶] Applies glaze, icing or other topping to baked goods, using spatula or brush. [¶] Working with Bakery Sales Manager and others, plans items to be baked for day and week. [¶] Obtains necessary ingredients from storage areas. Reads recipe and follows to mix ingredients in the proper proportions. Computes amounts needed. [¶] Mixes ingredients by hand or using power mixer. Pours into molds, pans, sheets or other container. Places in oven. Adjusts heat and bakes for proper time. [¶] Uses measuring cups, spoons or scales to measure flour, sugar, shortening, or other ingredients. [¶] Rolls, cuts or shapes dough using hand or power equipment. Mixes toppings according to above procedure and applies to finished baked goods. May take special orders in person or over the phone." Essential duties are specified as follows: "Safeway [Vons] Baker employees are responsible for completing the following essential job functions: 1. Provide Legendary Customer Service as currently defined by the employer within the scope of the position and within company policy. 2. Measures flour, sugar, shortening, and other ingredients to prepare batters, dough, fillings, and icings, using scales and graduated containers. 3. Dumps ingredients into mixing-machine bowl or steam kettle to mix or cook ingredients according to specifications. 4. Rolls, cuts and shapes dough to form sweet rolls, pie crusts, tarts, cookies, and related products preparatory to baking. 5. Places dough in pans, molds or on sheets and bakes in oven or grill. 6. Recognizes when item is done and removes from heat. 7. Obtain necessary stock and transports to work

6

area.  8.  Turns controls, dials and switches.  9.  Reads recipes and other instructions.  10.  Moves heavy items by lifting and carrying."  These were the essential duties of the baker position when the trial court heard Vons's summary judgment motion.

A baker's helper can help with such tasks as obtaining and transporting stock, putting dough on the pans, taking the goods out of the oven, and moving and lifting heavy items.  The collective bargaining agreement specifies that tasks of a baker's helper are as follows:  "Employees that are employed in the 'Helpers' classification may be utilized to perform all 'Bake-off' work [baking it after it has already been prepared—for example, putting an already made cake in the oven.  [¶]  Employees that are employed in the 'Helpers' classification of employment may also perform the following work:  Frying and Icing of all donuts, i.e., raised, cake, etc.; icing and finishing of all cream items, i.e., éclairs, cream puffs, etc.; icing and decorating of cookies; mixing of icings and toppings; wrapping, packaging, traying, slicing of baked products for display or sale; preparing a department for the next day's bake, including but not limited to, selecting and staging all ingredients for the next day's bake, removing products out of the department's freezer, lining and greasing pans, etc.; cleaning of the production area."  They cannot "handle the product in any way during the process of manufacture and finishing" and "shall not perform any Journeyman Baker's Work at all."

Duarte claims that Vons, which is self-insured and self-administered for workers' compensation, repeatedly denied treatment for Duarte's recovery, thereby prolonging his disability period.  According to Duarte, a co-worker accused him of acting like a pregnant woman because he needed help with his disability.  Duarte reacted to the insult and was terminated, only to be reinstated.  There is no indication as to whether Vons did or did not discipline the worker who made the insult in apparent violation of Vons's policies.

At one store where Duarte worked from August 2009 to September 2009, the manager forced Duarte to do work in excess of his limits and would not let the helper help him.  That manager also ridiculed Duarte for his disability and threatened to terminate him.  He refused to let Duarte get his medications and did not give permission to him to see the doctor.  In August of 2009, Duarte's doctor noted in his notes that

7

Duarte complained of harassment. There appears to be no evidence that this particular note was sent to Vons's in-house workers' compensation examiners. Vons took no action. Duarte filed a complaint with the Department of Fair Employment and Housing (DFEH), which promptly closed the matter on August 31, 2011, with a Right-To-Sue notice. On August 30, 2012, Duarte filed an action against Vons alleging causes of action for disability and age discrimination, failure to prevent discrimination, failure to engage in the interactive process, unfair business practices, and wrongful discharge.

Vons filed a Motion for Summary Judgment and Summary Adjudication, which was granted. The trial court did not rule on evidentiary objections by either of the parties, and none of those evidentiary objections is the subject of this appeal. The trial court discussed the FEHA contentions, but not the other causes of action. Duarte filed a timely notice of appeal.

## DISCUSSION

### A.     Standard of Review

"We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].)  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'  (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; see *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.)  If there is

8

insufficient evidence from which a reasonable trier of fact can find in favor of the plaintiff, a summary judgment in favor of the defendant is appropriate. (See *Eddins v. Redstone* (2005) 134 Cal.App.4th 290, 327-328.)

### B. General Principles

FEHA sets forth separate causes of action for unlawful employment practices, including three at issue in this case—"disability discrimination, failure to accommodate, and failure to engage in the good faith interactive process to determine a reasonable accommodation." (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 970 (*Lui*).)[3] FEHA "prohibits discrimination based on an employee's physical disability." (*Green v. State of California* (2007) 42 Cal.4th 254, 262 (*Green*); see § 12940, subd. (a).) "An employer may discharge . . . a person who, because of a disability or medical condition, 'is unable to perform his or her essential duties even with reasonable accommodation.'" (*Ross v. RagingWire Telecommunications* (2008) 42 Cal.4th 920, 926; see § 12940, subd. (a)(1).)

A plaintiff establishes a prima facie case of disability under FEHA if he or she shows that he or she suffered from a disability, was otherwise qualified to do his or her job, and was subjected to an adverse employment action because of the disability. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359 (*Nealy*); *Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729 (*Furtado*). A plaintiff is a "qualified individual" for a position "in the sense that he or she is able to perform the essential duties of the position with or without reasonable accommodation." (*Green, supra,* 42 Cal.4th at p. 267; *Nealy,*

---

[3]     California Courts often look to federal decisions interpreting the American Disabilities Act of 1990, 42 U.S.C. section 12101 (ADA), in interpreting the FEHA. (*Reno v. Baird* (1998) 18 Cal.4th 640, 647; *Lui, supra,* 211 Cal.App.4th at pp. 971-972, fn. 9.)

9

*supra,* 234 Cal.App.4th at p. 378; *Furtado, supra,* 212 Cal.App.4th at p. 744.)[4]  "In order to prevail on a discriminatory discharge claim under section 12940(a), an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the job with or without accommodation (in the parlance of the ADA, that he or she is a qualified individual with a disability)."  (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 962 (*Nadaf-Rahrov*).)

"The FEHA also prohibits an employer from 'fail[ing] to make reasonable accommodation for the known physical or mental disability of an . . . employee.' (§ 12940, subd. (m).)  'The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.  [Citation.]'  (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009-1010 [93 Cal.Rptr.3d 338].)  A reasonable accommodation is 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 974.)  As with a FEHA discrimination claim, the plaintiff bears the burden of proving that he or she had the 'ability to perform the essential functions of a job with accommodation.'  (*Nadaf-Rahrov*, at p. 977.)"  (*Lui, supra,* 211 Cal.App.4th at p. 971.)

Reasonable accommodations may consist of such actions as job restructuring or an alteration of how an essential function is performed.  (*Nealy, supra,* 234 Cal.App.4th at p. 374.)  Job restructuring may include the "'reallocation or redistribution of non-essential job functions in a job with multiple responsibilities.'"  (*Ibid.*)

The determination of essential job functions is a "highly fact-specific inquiry."  (*Cripe v. City of San Jose* (9th Cir. 2001) 261 F.3d 877, 888, fn. 12; *Lui, supra,* 211

---

[4]  Section 12940, subdivision (a)(1) uses the phrase "essential duties" and the ADA uses the term "essential functions."  The phrases are interchangeable.  (*Lui, supra,* 211 Cal.App.4th at p. 971, fn. 8.)

10

Cal.App.4th at p. 971.) Generally, the essential functions of a job are a question of fact. (See *Lui, supra,* 211 Cal.App.4th at p. 971; *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 967, fn. 6.) "Evidence of whether a particular function is essential includes, but is not limited to, the following: (A) The employer's judgment as to which functions are essential. (B) Written job descriptions prepared before advertising or interviewing applicants for the job. (C) The amount of time spent on the job performing the function. (D) The consequences of not requiring the incumbent to perform the function. (E) The terms of a collective bargaining agreement. (F) The work experiences of past incumbents in the job. (G) The current work experience of incumbents in similar jobs." (§ 12926, subd. (f)(2); *Lui, supra,* 211 Cal.App.4th at p. 977.) "'Usually no one listed factor will be dispositive . . . .'" (*Lui, supra,* 211 Cal.App.4th at p. 977.)

For a plaintiff to prevail on claims for disability discrimination and failure to provide a reasonable accommodation, he or she must show that he or she was able to perform the essential functions of the position from which he or she was terminated with or without a reasonable accommodation. (*Lui, supra,* 211 Cal.App.4th at p. 971; see *Green, supra,* 42 Cal.4th at p. 264.)

The FEHA does not require an employer to shift a disabled employee's essential duty to other employees. (*Nealy, supra,* 234 Cal.App.4th at p. 375, citing *Dark v. Curry County* (9th Cir. 2006) 451 F.3d 1078, 1089.) The statute does not require other employees to work harder or longer. (See *Rehrs v. Iams Co.* (8th Cir. 2007) 486 F.3d 353, 357; *Mason v. Avaya Communications, Inc.* (10th Cir. 2004) 357 F.3d 1114, 1121, fn. 3; *Turco v. Hoechst Celanese Corp.* (5th Cir. 1996) 101 F.3d 1090, 1094, citing *Milton v. Scrivner, Inc.* (10th Cir. 1995) 53 F.3d 1118, 1125 (*Milton*).) Slowing production or assigning an injured worker lighter loads is not required by law. (*Milton, supra,* 53 F.3d at p. 1125.) Also, that another employee is required to do an employee's duties suggests that the duties are essential. (*Rehrs v. Iams Co., supra,* 486 F.3d at p. 357.)

11

Although an employee cannot be expected to identify and request all possible accommodations during the interactive process, "the employee should be able to identify specific, available reasonable accommodations through the litigation process, and particularly by the time the parties have conducted discovery and reached the summary stage." (*Nealy, supra,* 234 Cal.App.4th at p. 379.) If the employee cannot identify such a reasonable accommodation after discovery in litigation, he or she has suffered no remediable injury from any violation of section 12940, subdivision (n). (*Nealy, supra,* 234 Cal.App.4th at p. 379; *Scotch v. Art Institute of California, supra,* 173 Cal.App.4th at p. 1019.) One court in referring to a federal decision said, "'an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process.'" (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 261, quoting *Barnett v. U.S. Air, Inc.* (9th Cir. 2000) 228 F.3d 1105, 1116.)

FEHA provides separate causes of action for failing to engage in the interactive process and failing reasonably to accommodate a disability of an employee, unless the accommodation would cause the employer an "undue hardship." (§ 12940, subds. (m) & (n); *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1383-1384.) The employer's duty to engage in the interactive process is distinct from its duty to accommodate. (§ 12940, subd. (n); see *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th. 413, 424; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950.) The availability of a reasonable accommodation is a prerequisite to liability under section 12940, subdivision (n) for failing to engage in the interactive process. (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 984.) Thus, to recover for a failure to engage in the interactive process, the "employee must be able to identify a reasonable accommodation that would have been available during the interactive process." (*Scotch v. Art Institute of California, supra,* 173 Cal.App.4th at p. 995; see also *Nealy, supra,* 234 Cal.App.4th at p. 379.)

## C.  Essential Duties[5]

Whether or not the pushing, pulling, and lifting of equipment and materials is an essential function of a baker in this case is the key question as to the claims for disability discrimination, failure to accommodate, or failure to engage in the interactive process. We examine the evidence submitted in connection with the factors regarding whether a function is essential (§ 12926, subd. (f)(2)).

The employer, Vons, considered the pulling, pushing, and lifting of material over 10 to15 pounds to be an essential function of the job of a baker. A Vons employee said that "the baker position exists for the creation of the baked goods" and not "for the purposes of lifting or moving raw materials." A position's purpose is, however, different than its essential duties. (See, e.g., *Lui, supra,* 211 Cal.App.4th at pp. 973, 977-983.) For example, an essential duty of an auto repairman is to lift certain parts, but the purpose of the job is to repair automobiles—not just lift parts.

Vons's written job description for a baker, includes, "Moves heavy items by lifting and carrying." The "physical demands" part of the job description specifies that lifting between 11 to 20 pounds is frequent and lifting 21 to 35 pounds is occasional; carrying up to 35 pounds 10 to 30 feet is occasional; pushing and pulling carts of 21 to 35 pounds up to 30 feet is frequent; pushing and pulling items weighing 11 to 20 pounds a short distance is constant; and overhead reaching to obtain items is seldom done. In addition the baker is required to dump ingredients into bowls, obtain necessary stock and transport it to the work area. The strength requirement for a baker is described as "Heavy level."

Duarte testified that he was required to do all of the above activities set forth in the job description. He said he was required to lift ingredients up to 35 pounds "more than 50 percent of the time [he] worked." He said he was required to carry items up to 50 pounds a distance of 10 to 30 feet more than 50 percent of the time he worked. He said he was required to push and pull items weighing more than 35 pounds up to 30 feet more than 50 percent of the time he worked. He also said he had to lift or carry items that were

---

[5]  As noted, the terms "essential duties" and "essential functions" are used interchangeably in the cases. (Fn. 4, *supra.*)

more than 50 pounds, and he had to do that more than 50 percent of the time he worked. He added that every 20 or 30 minutes he had to reach over his head with both hands to move or obtain items that weighed 30 to 60 pounds. The flour comes in 50 pound bags. According to a Vons witness, placing dough in the pans or molds takes two and one-half to three hours. A baker spends 15 minutes a day dumping and mixing ingredients, five minutes a day obtaining stock and transporting it, and 20 minutes a day removing and lifting heavy items.

If Duarte did not perform these duties, someone else had to do them. The collective bargaining agreement refers to the baker mixing and baking and dumping ingredients and obtaining the necessary ingredients from storage areas. Under the collective bargaining agreement "helpers" were not allowed to handle the products during the process of manufacturing or finishing and could "not perform any journeyman Baker's Work at all."

Duarte submitted no significant evidence that that lifting, pulling, carrying, and reaching elements of the baker's job were not essential functions. He said that instead of lifting or pouring from a heavy bag, the content could be scooped out. But Vons's representative said, "when we make bread we do it by 50 pound bags," and scooping out the material "would not be time-efficient." He added, "I don't know how he would get everything done in a day if he did it that way."

It is true that generally the determination of a job's essential duties is a question of fact. (*Lui, supra,* 211 Cal.App.4th at p. 971.) But when the plaintiff does not submit sufficient evidence from which a reasonable finder of fact can find in his favor, the issue becomes one of law. Cases have held that the issue of essential job duties may be determined on a summary judgment. (See, e.g., *Nealy, supra,* 234 Cal.App.4th at p. 374.)

There is not sufficient evidence from which a reasonable finder of fact could conclude that the tasks that Duarte's doctors prohibited were not essential duties of his job as a baker.

14

### D. Causes of Action for Discrimination, Failure to Accommodate, and Failure to Engage in Interactive Process

As Duarte could not perform an essential job duty, he cannot prevail on his discriminatory discharge claim under section 12940, subdivision (a). (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 962.) Duarte cannot prevail on his claim of a failure to accommodate under section 12940, subdivision (m) because he could not show that he was able to perform the essential functions of the position from which he was terminated—a baker with or without reasonable accommodation. (*Lui, supra,* 211 Cal.App.4th at p. 971.)

The only accommodations Duarte proposed was to have a helper do all the lifting, pulling, pushing, and reaching and pouring of heavy material and allowing Duarte to use a scooper instead of pouring. The proposed accommodation was not reasonable as a matter of law. (See *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1218.) An employer is not required to hire an assistant for a disabled employee, create a special light position for the disabled employee, or assign the employee's essential job requirements to others. (*Id.* at p. 1223; see *Majors v. General Electric Co.* (7th Cir. 2013) 714 F.3d 527, 534 ["material handler doing the heavy lifting for [plaintiff] wasn't a reasonable accommodation and so isn't required under the ADA"].) That there were helpers in some stores does not aid plaintiff's position because under the collective bargaining agreement, helpers cannot do the essential tasks Duarte would have them do. (See *Willis v. Pac. Mar. Ass'n* (9th Cir. 2001) 244 F.3d 675, 680 [courts "have held that an accommodation that violates a collective bargaining agreement is *per se* unreasonable"].) As noted, the FEHA does not require an employer to shift a disabled employee's essential function to other employees. (*Nealy, supra,* 234 Cal.App.4th at p. 375.) And requiring a helper to work harder by devoting time to Duarte is not required. (See *Rehrs v. Iams Co., supra,* 486 F.3d at p. 357.) According to Duarte, he had to perform the essential functions in question more than half the time. The time the Vons's witness allocated to these functions was not insignificant. A helper would have to devote a substantial amount of his time to perform these tasks.

15

That Vons temporarily placed Duarte on modified duty for a month does not require Vons to make such an arrangement permanently. (See *Raine, supra,* 135 Cal.App.4th at p. 1227.) The suggestion that Vons should have modified the baker's position to allow scooping the contents of the 50 pound bags would not solve all the other lifting, pushing, pulling, carrying and reaching requirements. Moreover, as discussed above, the scooping proposed appears to be inefficient. Vons did search for alternative jobs, which turned out to be a service desk or clerk at a fuel station without a convenience store. No such positions were available in Los Angeles County, and Duarte was not interested in such positions.

Extending Duarte's leave of absence beyond 15 months was not a reasonable accommodation. Vons was not obligated to wait indefinitely for Duarte's disability to be corrected. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226-227; 2 Cal. Code Regs., tit. 2, § 11068, subd. (c).) Vons had no information as to when, if ever, Duarte could return to work. His physician had concluded that his disability was permanent and stationary.

Duarte suggests that Vons would not approve certain treatments. But Duarte does not tie in this allegation with any of his causes of action, and he did not make such an allegation in his complaint. Plaintiff has not submitted sufficient evidence from which a reasonable finder of fact could find that he had the ability to perform the essential functions of a job with an accommodation.

With regard to Duarte's claims that Vons did not fulfill its duty to engage in the interactive process, Duarte's failure to identify a reasonable accommodation that was available at the time the interactive process should have occurred, dooms his claim. (*Scotch v. Art Institute of California, supra,* 173 Cal.App.4th at p. 995.) Vons did initiate an interactive process, but Duarte only indicated a desire to continue to be a baker and was not interested in being assigned to a different position. Vons was only required to provide reasonable accommodations "to perform the essential functions of the job held or desired." (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at pp. 972-973.)

16

### E. Harassment

Duarte stated that he was terminated for reacting to statements on June 13, 2009, by a co-worker who said Duarte was like a pregnant woman because he needed accommodations. Duarte was reinstated on August 17, 2009, and transferred to another store until September 4, 2009, when he was involuntarily placed on a leave of absence. At that store the manager, Augusto Vallejo made negative comments to Duarte about Duarte's age and physical restrictions. Vallejo yelled at him and said he did not want such people working at the store. Vallejo threatened and intimidated him. It is an unlawful employment practice for an employer or any other person to engage in disability harassment. (§ 12940, subd. (j)(1).)

Vons asserts that the harassment claim is time barred by section 12960, subdivision (d), which states, that "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice . . . occurred." Duarte says the alleged harassment occurred prior to September 4, 2009. He admitted he was not harassed after that date. He failed to file his complaint or charges with the Department of Fair Housing and Employment until August 30, 2011. Duarte invokes the continuing violation doctrine (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*)) and equitable estoppel.

Duarte claims the leave of absence makes the harassment claim a continuing violation. In *Richards, supra,* 26 Cal.4th at page 802, the Supreme Court said, "[w]e conclude, consistent with the language and purposes of the FEHA, as well as federal and California case law, that an employer's series of unlawful actions in a case of failure to reasonably accommodate an employee's disability, or disability harassment, should be viewed as a single, actionable course of conduct if (1) the actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." The court applied the continuing violation doctrine to plaintiff's disability discrimination claim, as well as to her disability harassment claim. (See *Yanowitz v.*

17

*L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1057 (*Yanowitz*).) Duarte argues that the discriminatory conduct continued until he was terminated and was similar in kind to the harassment for purposes of the continuing violation doctrine.

The alleged harassment is sufficiently dissimilar from putting Duarte on a leave of absence as an accommodation, to preclude the application of the continuing violation doctrine. The alleged harassment was inconsistent with Vons's assignment of Duarte to the store with a helper.

As to the placement on a leave of absence, Duarte knew that or had reason to know that he would not be accommodated as he thought appropriate. In September 2009, Duarte was aggrieved by being put on a leave of absence. He said he never asked for that and was not allowed to go back to work, which he wanted to do. Vons was not willing to continue with the accommodation Duarte wanted—the helper assisting with essential functions. The only accommodation he wanted was to resume his job as a baker with help. Duarte argues that FEHA prohibits placing an employee on involuntary leave of absence when accommodations that would enable the employee to continue working were available. He calls it an "illegal leave of absence" and a "direct violation of the FEHA." Thus, the failure to accommodate had acquired a degree of permanence preventing a continuing course of conduct to toll the statute of limitations.

Plaintiff invokes an equitable tolling argument as to the statute of limitations. That doctrine is not applicable. That doctrine applies when a plaintiff has pursued alternative remedies, either internal remedies or other administrative action. (See Chin, et al., California Practice Guide: Employment Litigation (The Rutter Group 2014) § 16:263.2, p. 16-39; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192.) Duarte does not contend he had pursued any alternative remedy.

## F.    Age Discrimination

Vons argues that it had valid grounds to terminate Duarte because he could not fulfill the essential functions of his job. Duarte submitted no evidence that this reason was pretextual or that he was terminated because of his age.

18

Vallejo made some references to Duarte's age, but that was before Duarte went on leave in September 2009. Vons did not terminate Duarte until 15 months later, and there is no evidence Vallejo had anything to do with it.

"[T]o avoid summary judgment, an employee claiming [age] discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination. [¶] It is not enough for the employee simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005, cited with approval in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357, 358, 361, fn. 24). Finally, Duarte has not set forth any specific argument on his age discrimination claim.

### G. Failure To Prevent Discrimination

As Duarte has no valid claim for discrimination, he cannot maintain a claim for failure to prevent discrimination under section 12940 subdivision (k). (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4.)

### H. Retaliation

Duarte claims retaliation under section 12940, subdivision (k), which makes it an unlawful employment practice for an employer to "discriminate" against any person because the person has opposed any practices forbidden under the FEHA. "To establish a prima facie case of retaliation, the plaintiff must show he or she engaged in a 'protected activity,' the employer subjected the employee to an adverse employment action, and a causal link existed between the protected activity and the employer's action." (*McRae v. Dept. of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386; see *Yanowitz, supra*, 36 Cal.4th at p. 1042.)

19

Duarte has not made out a prima facie case for retaliation because he has shown no causal link between any alleged protected activity and Vons's actions.  As discussed, Vons had a valid, nondiscriminatory reason for its decisions.  Duarte does not argue that there was any retaliation for his filing a workers' compensation claim.  Duarte filed his workers' compensation claim at least by April, 2010 and he was terminated in December 2010.  This time discrepancy is not sufficient to show the necessary causal connection.  (See *Manatt v. Bank of America, NA* (9th Cir. 2003) 339 F.3d 792, 802; *Richmond v. ONEOK, Inc.* (10th Cir. 1997) 120 F.3d 205, 209; *Hughes v. Derwinski* (7th Cir. 1992) 967 F.2d 1168, 1174.)  Duarte does not argue this claim on appeal.

## I.       Wrongful Termination and Unfair Competition

Duarte's claims for wrongful termination and unfair competition under Business and Professions Code section 17200 are derivative of his FEHA claims.  Duarte relies on alleged FEHA violations for his Business and Professions Code section 17200 claim.  As there is no valid FEHA claim, the Business and Professions Code section 17200 claim fails.  (See *McDonald v. Coldwell Banker* (9th Cir. 2008) 543 F.3d 498, 503, 506 [ if no discrimination, no Business and Professions Code section 17200 claim].)

Similarly, as Duarte cannot establish a nexus between any alleged protected activity and his termination, he has not set forth a prima facie case for wrongful termination.  (See *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1258) overruled on another point in *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 498; see also *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 78 [plaintiff's failure to identify a statutory or constitutional policy that was thwarted by his termination prevents his claim for wrongful discharge].)

## J.       Intentional Infliction of Emotional Injury

Duarte's claim for intentional infliction of emotional injury fails for several reasons.  Duarte has not set forth evidence of extreme and outrageous conduct such that it exceeded all bounds of decency usually tolerated in a civilized society.  (*Hughes v. Pair*

20

(2009) 46 Cal.4th 1035, 1051.) Duarte cannot rely on Vons's conduct because it was lawful. If he relies on Vallejo's statements, they may have been inappropriate and insensitive but they only lasted for a short time, and as stated in *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1128, one is "not liable for mere insult, indignity, annoyance, or even threats, where the case is lacking on other circumstances of aggravation." (See *Wong v. Jing* (2010) 189 Cal.App.4th 1354.) "'It is for the court to determine whether on the evidence severe emotional distress can be found.'" (*Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397.)

There is no evidence that Duarte actually suffered severe or extreme emotional distress, a required element of the cause of action. (*Hughes v. Pair, supra,* 46 Cal.4th at p. 1051) Duarte was not treated by a doctor. He described not sleeping well and feeling bad, depressed, and emotionally sad—but such conditions resulted primarily from the economy. These conditions do not reflect severe or extreme emotional distress. Finally, Duarte's claim is based on injuries arising from work-related activities and are thus preempted by California's Workers' Compensation law. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754; see also *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902-903.)

For these reasons, Duarte has no claim for intentional infliction of emotional injuries.

## DISPOSITION

The judgment is affirmed.  Each party shall bear his or its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

BAKER, J.

22